## Chapman Estate

*Smyth, Straub & Thistle,* for accountants.

*George S. Forde, Jr.,* for legatee.

*James L. Price,* for Attorney General, parens patriae.

*Herbert W. Salus, Jr.,* Special Assistant Attorney General, for Commonwealth.

KLEIN, P. J., June 8, 1966.—Marie Chapman, also known as Marie K. Chapman, died on October 8, 1964, unmarried and without issue and without other known next of kin, leaving a will which was admitted to probate on October 23, 1964, when letters testamentary were granted. Proof of advertisement of notice thereof was produced to the auditing judge.

By her will, dated October 2, 1964, testatrix directed that $1,000 be given to the Nurses' Alumnae Association of Temple Hospital. She also directed that $50 be paid to George Bennett for conducting memorial services and directed that all furniture in her apartment should go to Irene Reymann, Florence Mitchell and Mattie Horn, as they might select. Her will also provided as follows:

"Any money remaining is to be sent to Father Nicholas H. Wegner, Boy's Town, Nebraska, to pay for the education of a fine boy of his selection, preferably one who is handicapped".

The Attorney General of the Commonwealth of Pennsylvania claims the residue of the estate as statutory heir, under section 3(6) of the Intestate Act of April 24, 1947, P. L. 80. He contends that this gift is invalid by reason of section 7(1) of the Wills Act of April 24, 1947, P. L. 89, which provides that any bequest for religious or charitable purposes included in a will executed within 30 days of the death of testator shall be invalid, unless all who would benefit by its in-

validity agree that it shall be valid or substantially the same gift is contained in a previous will.

Father Nicholas H. Wegner is a secular priest of the Archdiocese of Omaha, Nebraska, assigned to Boys' Town as director in charge of its operations. He is not under any vow of poverty and is permitted to own and hold property in his own name and for his own purposes. No evidence was furnished which would indicate that testatrix knew Father Wegner personally or had personal contact with him.

Boys' Town was started in 1917 by Father Edward J. Flanagan, a Roman Catholic priest, as a home and school for neglected and homeless boys, who are admitted regardless of color, race or creed. It has received universal acceptance and commendation as an outstanding charity.

Counsel for Father Wegner claims the legacy in his behalf. He advances two arguments in support of his position which are somewhat inconsistent and contradictory. He first contends that the gift to Father Wegner is an outright gift of principal, free from any charitable trust or limitations. Then he maintains that it is contrary to the public policy of the State for the Attorney General to claim against the "supposed charitable purpose".

In our opinion, the gift to Father Wegner is clearly a gift for charitable purposes and, under the circumstances of this case, invalid. In the first place, there is no dispositive language making any gift to him personally. Testatrix did not expressly give the money to Father Wegner. She directed that it should be *"sent"* to him. We believe that this is significant. That she did not intend the gift to be a personal one to him is made clear from her direction that it should be used for one of the primary purposes for which Boys' Town was founded, and is being operated under his direction, i.e., the education of boys. The fact that Father Weg-

ner had the right to select the boy to be educated does not in any way destroy its charitable character. He could no more use the money for his own purposes than he could use it for the education of a girl he selected or for any charitable purpose other than "the education of a fine boy of his selection, preferably one who is handicapped".

Counsel for Father Wegner contends that the instant case is controlled by Terrell Estate, 14 Fiduc. Rep. 445 (1964), decided by President Judge Dwyer of the Orphans' Court of Erie County. We have studied that case carefully, and are satisfied that it is sui generis and inapposite. In Terrell Estate, one third of the estate was given to Dr. Terrell, " '. . . to be used by him for the care, maintenance and treatment of indigent and needy persons who are not financially able to pay the same, *absolutely*' ". (Italics added.) The court held that the use of the words "to be used by him" and "absolutely" indicate that testator's intent was to make the gift to the doctor personally, and not subject to charitable limitations. One of his reasons for reaching this conclusion was the fact that testator used the word "absolutely" in describing three other gifts which he made in his will. Judge Dwyer also relied upon the circumstance that a gift was given to Dr. Terrell in the paragraph next following the one containing the disputed gift "in trust" for charitable purposes. The court said:

"It is true that it is not necessary to use this word [trust] in order to set up a valid trust, but, at the same time, it is apparent . . . that he could have set up a trust by using the word 'trust', since he used the word in the next paragraph in actually setting up a trust".

With respect to counsel's suggestion that it is against the public policy of the State for the Attorney General to challenge the validity of the gift in question, we will merely say that we know of no authority which permits

the Attorney General to surrender gratuitously to a charitable organization or to a citizen of another State property which, under our law, he is convinced belongs to the people of our Commonwealth. On the contrary, it is his duty to press vigorously for the award of such funds for use in behalf of our own citizens. . . .

And now, June 8, 1966, the account is confirmed nisi.